E-filed on: 10/15/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| McCARTHY GILROY, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>STARBUCKS CORPORATION, a Washington corporation and DOES 1 through 20, inclusive<br><br>    Defendants. | No. C-08-05411 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART STARBUCKS' MOTION TO DISMISS<br><br>**[Re Docket No. 5]** |

Defendant Starbucks Corporation moves to dismiss the complaint with prejudice. Plaintiff McCarthy Gilroy LLC ("McCarthy") opposes the motion. Having considered the papers submitted by the parties and the arguments of counsel at oral argument, and for good cause appearing for the reasons set forth below, the court grants the motion in part and denies it in part.

## I. BACKGROUND

McCarthy owns land at the intersection of Highway 152 and Cameron Boulevard in Gilroy, California. Compl. ¶ 6. It refers to the land as the "McCarthy Retail Center," which is comprised of nine lots. *Id.* This case involves "Parcel 6," the property's corner lot. *Id.* ¶ 7.

In 2006, Starbucks approached McCarthy about developing a coffee shop on the corner lot. *Id.* The parties engaged in lengthy negotiations, which resulted in a letter of intent signed in March

1   of 2007. *Id.* ¶ 8. McCarthy describes the letter of intent as follows: "According to the LOI, the
2   parties were to execute a written lease under which McCarthy would construct, and Starbucks would
3   lease, a building (or a portion thereof) specifically designed to accept a Starbucks location . . . ." *Id.*
4   McCarthy further alleges that Starbucks delivered a draft lease to McCarthy, and that the draft lease
5   required Starbucks to prepare the plans for the coffee shop, McCarthy to build it, and Starbucks to
6   install the improvements necessary for it to operate the shop. *Id.* ¶ 9.

7   McCarthy contends that it was willing to build the coffee shop at its expense because it
8   anticipated that Starbucks would draw traffic to the shopping center and serve as an "anchor tenant"
9   for the development. *Id.* ¶ 10. Thus, McCarthy accepted plans and specifications for the coffee
10  shop from Starbucks. *Id.* ¶ 12(a). McCarthy then began construction on the coffee shop, which
11  Starbucks supervised. *Id.* ¶¶ 12(b)-(c). Starbucks' supervision extended to issuing change orders
12  during the construction. *Id.* ¶ 12(c). Starbucks urged McCarthy to hurry to enable Starbucks to
13  "take possession absolutely as soon as possible." *Id.* ¶¶ 12(d), (g).

14  The complaint is clear that no written lease existed during the construction. This may have
15  concerned McCarthy, but Starbucks represented that "the parties 'had a deal' notwithstanding the
16  lack of a formal signed lease" and "that Starbucks would not back out of the deal because it 'does not
17  operate that way.'" *Id.* ¶¶ 12(e)-(f). According to McCarthy, Starbucks operated "as if the
18  agreement to lease was in place by asking McCarthy to waive a selected provision in order to open
19  the Starbucks store sooner." *Id.* ¶ 12(h).

20  McCarthy finished building the coffee shop in mid-December of 2007. *Id.* ¶ 13. The shop
21  had been built to Starbucks' specifications and to accommodate the specialized improvements that
22  Starbucks installs in its coffee shops. *Id.* ¶ 14. In the end, it cost McCarthy $1.2 million. *Id.* On
23  December 21, 2007, however, Starbucks told McCarthy it would not sign a lease and would not
24  open a Starbucks in the new building. *Id.* ¶ 15. Starbucks informed McCarthy that it did not believe
25  the parties had a binding agreement and that it was not obliged to pay for the building. *Id.*

26  McCarthy has been unable to lease the building to any other tenant. *Id.* ¶ 14.

27  McCarthy alleges that "by virtue of the LOI and/or Starbucks' conduct thereafter," Starbucks
28  agreed to rent the coffee shop and open a store there. *Id.* ¶ 11. Thus, McCarthy asserts that

1  Starbucks has breached an oral contract to lease the coffee shop for $46.20 per square foot (with
2  annual increases of 10%) for five years.  *Id.* ¶¶ 16-21.  To the extent the parties' contract was not
3  oral, McCarthy alleges that Starbucks breached an implied contract.  *Id.* ¶¶ 22-24.  In the alternative,
4  McCarthy alleges that Starbucks should have known its conduct would lead McCarthy to rely on
5  Starbucks and construct the building and that McCarthy should be compensated for the expenses it
6  incurred in reliance on Starbucks' representations.  *Id.* ¶¶ 25-29.  McCarthy also alleges as its fourth
7  claim a common count incorporating the bulk of the complaint's allegations.  *Id.* ¶¶ 30-32.

## II.  ANALYSIS

### A.  Consideration of the Letter of Intent

McCarthy did not attach to its complaint its letter of intent with Starbucks.  Starbucks has submitted a marked-up copy of the letter of intent from its files, supported by the declaration of Jean Kerneen, the Starbucks Real Estates Development Adviser responsible for documenting the negotiations between Starbucks and McCarthy.  *See* Kerneen Decl. ¶¶ 1-2, Ex. A.  McCarthy objects to the letter of intent being considered in connection with Starbucks' motion to dismiss as a "matter outside of the pleadings."  McCarthy also contends that the parties dispute the "legal effect" of the letter of intent, but it does not dispute the authenticity of the document provided from Ms. Kerneen's files.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  An exception exists, however, to prevent a plaintiff from deliberately omitting documents central to their claims to frame the pleadings to survive a motion to dismiss.  *Id.*  Thus, "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."  *Id.*  This exception applies here.  McCarthy repeatedly referred to the letter of intent in its complaint.  It discussed the letter of intent as the starting point of the parties' lease negotiations.  Compl. ¶ 8.  McCarthy also alleges that the letter of intent establishes Starbucks' intent to be bound to lease the coffee shop.  *Id.* ¶ 11.  To be sure, McCarthy does not allege a contract

ORDER GRANTING IN PART AND DENYING IN PART STARBUCKS' MOTION TO DISMISS
No. C-08-05411 RMW
TER                                                            3

claim arising from a breach of the letter, but the complaint relies on the letter as evidence of Starbucks' intent to form the oral and implied contracts that McCarthy alleges existed.

Under the test applied in *Swartz* (and the lines of Ninth Circuit cases it cites), the only important question is whether the document is authentic, not whether the parties dispute its legal significance. The court will therefore consider the letter of intent and give it any weight that it deserves in ruling on the motion.

**B.     The Contract Claims**

Starbucks moves to dismiss McCarthy's first claim for breach of an oral contract and second claim for breach of an implied contract on two grounds. First, Starbucks argues that any such claims are barred by the provisions of the letter of intent. Second, Starbucks contends that the contract claims fall within California's Statute of Frauds.

**1.     The Letter of Intent's Impact on the Contract Claims**

In March 2007, the parties signed a nine-page letter of intent that sketched a detailed "basis for the negotiations for a lease between Landlord and Starbucks as the tenant." Kerneen Decl., Ex. A at 2 (hereinafter "LOI"). Whether a preliminary document like this letter of intent creates a lease depends on the intent of the parties. *Levin v. Saroff*, 54 Cal. App. 285, 289-90 (1921). This requires the court to consider the entirety of the written agreement to determine if the letter constitutes an agreement or not. *Smissaert v. Chiodo*, 163 Cal. App. 2d 827, 830-31 (1958). To protect the negotiation process, parties frequently state that a memorandum or letter of intent is not a binding agreement. *E.g.,* Kevin M. Shelley & Jonathon J. Toronto, *Preliminary Agreements: How to Avoid Unintended Contractual Obligations*, 25 Franchise L.J. 47, 52-53 (Fall 2005) (discussing the use of letters of intent to "avoid inadvertent contracts"). Thus, "if the parties expressly provide that no obligation shall arise until the formal writing is executed, that expression of intent will be given effect." 1 Williston on Contracts § 4:11, at 504 (4th ed. 2005); *e.g., Smissaert*, 153 Cal. App. 2d at 831-33.

Here, the letter states that "it will be superseded by, and the parties will only be bound by, the terms of a written lease agreement, in form and substance satisfactory to both parties, which has been fully executed and delivered by the parties." LOI at 9. Presumably because of this clear intent,

ORDER GRANTING IN PART AND DENYING IN PART STARBUCKS' MOTION TO DISMISS
No. C-08-05411 RMW
TER                                                    4

1  McCarthy does not allege that the letter of intent created a written lease agreement and does not sue
2  for breach of contract based on the letter.  McCarthy instead alleges that following the letter of
3  intent, Starbucks entered into an oral or implied lease agreement with McCarthy.  Starbucks,
4  however, urges that the LOI constituted an agreement between the parties that they would be bound
5  only by a subsequently signed written lease and that they expressly recognized that each of them
6  was at risk of incurring costs for which the other party would have no obligation.

7  McCarthy's position on the legal effect of the "will not be bound" provision of the letter of
8  intent is unclear.  Its opposition states that the "parties contemplated a written lease under the [letter
9  of intent]" and again that the "LOI contemplated an executed lease."  Opp'n at 6:15-16; 7:7.
10 Nevertheless, McCarthy opposes the motion on the assumption that even if the parties did agree that
11 they would only be bound by a later written lease agreement, they could nevertheless enter into a
12 binding oral or implied agreement on the subject matter expressly covered by the LOI.  The court
13 disagrees.  McCarthy cannot assert a viable contractual relationship between itself and Starbucks
14 because the alleged oral or implied contract is factually contradicted by the letter of intent.
15 Accordingly, the court dismisses McCarthy's first two claims for failure to state a claim upon which
16 relief may be granted.

17                     **2.     The Statute of Frauds**

18     Starbucks next moves to dismiss the two breach of contract claims arguing that the alleged
19 contracts do not comply with the statute of frauds.  However, since the court finds that the pleadings
20 do not set forth a viable claim for breach of contract, the statute of frauds does not come into play.
21 There is no lease, oral or otherwise, for which the statute of frauds might preclude enforcement.

22          **C.     The Promissory Estoppel Claim and Common Count**

23     Starbucks also moves to dismiss McCarthy's third claim for promissory estoppel.  Starbucks
24 does not separately argue why the promissory estoppel claim should be dismissed, nor does
25 McCarthy separately address why the claim should stand.  Starbucks' argument for dismissal is that
26 the facts underlying the promissory estoppel claim are "contradicted" by the provision of the letter of
27 intent that states that the parties "will not be bound" absent a written agreement.  The doctrine of
28 promissory estoppel, however, allows a party who reasonably relied on a promise of another to

ORDER GRANTING IN PART AND DENYING IN PART STARBUCKS' MOTION TO DISMISS
No. C-08-05411 RMW
TER                                                          5

enforce that promise in order to avoid injustice, even if the promise is otherwise unenforceable. *See* 1 Witkin, Summary of California Law, Contracts §244 (10th ed. 2005); *C & K Eng'g Contractors v. Amber Steel Co.*, 23 Cal.3d 1, 6 (1978). Starbucks' argument, focusing on the letter of intent, raises the issue of whether or not McCarthy could have reasonably relied on the alleged promise, which is a defense to the claim but does not itself defeat the claim at the pleading stage.

McCarthy also alleges a fourth "common count." Neither party separately addresses the claim separately in its brief. "A common count is not a specific cause of action[.]" *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004). It appears to be merely a "simplified form of pleading" used to allege that money is owed. *Id.* It survives or falls with the other alleged claims. *Id.* at 295. Because the court has denied Starbucks' motion as to the promissory estoppel claim, the court also denies Starbucks' motion to dismiss the fourth claim for relief.[1]

### III.  ORDER

For the foregoing reasons, the court grants in part and denies in part Starbucks' motion to dismiss. The first and second causes of action for breach of contract are dismissed. The motion to dismiss the third and fourth causes of action is denied. Plaintiff is granted 20 days leave to amend, although plaintiff has not suggested additional facts that could be alleged that would save the breach of contract claims.

DATED:     10/15/09

RONALD M. WHYTE
United States District Judge

---

[1] Although the common count claim is not dismissed, it provides no basis for recovery different from that claimed in the promissory estoppel cause of action.

**Notice of this document has been electronically sent to:**

**Counsel for McCarthy:**

John F. Domingue        jfd_esq@yahoo.com
Frank R. Ubhaus        fru@berliner.com

**Counsel for Starbucks:**

Eileen Meghan Ahern        eahern@willenken.com
Jason Haruo Wilson        jasonwilson@willenken.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   10/15/09                                   TER
                                                                                    **Chambers of Judge Whyte**